THERESA E. TONER, PETITIONER-DEFENDANT, v. INTER-
NATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL
AND ORNAMENTAL IRONWORKERS, RESPONDENT-
PROSECUTOR.

Argued May 5, 1942—Decided June 16, 1942.

Before Justices CASE, DONGES and COLIE.

For the defendant in *certiorari, Louis M. Mallin.*

For the prosecutor in *certiorari, Andrew F. Zazzali.*

The opinion of the court was delivered by

CASE, J.   The question is whether an allowance of $650 counsel fee to Louis M. Mallin, attorney for the petitioner, in a workmen's compensation case, was lawfully allowed on December 22d, 1941, seven and one-half years after the Court of Errors and Appeals had finally determined the issue.

On February 6th, 1931, Theresa E. Toner filed her petition with the Workmen's Compensation Bureau on a claim arising out of the death of her husband.   The respondents were the International Association of Bridge, Structural and Ornamental Ironworkers and Local No. 350 of the organization.   The Bureau determined that the Local, and not the International, was the employer.   The petitioner appealed to the Atlantic County Court of Common Pleas.   The decision in the Pleas was that the judgment should run against the International Association, that, beginning August 12th, 1941, the Association should pay to the petitioner for the benefit of her son, Francis L. Toner, $20 a week for 233-3/7 weeks and that the Association should pay "at this time $500 as counsel fee to the petitioner's attorney (viz., Louis M. Mallin) for his services in prosecuting this claim." *Slayback Van Order Co.* v. *Eiben,* 115 *N. J. L.* 17, 25.   The reason for deferring the compensation payments was that a verdict of $12,000 had been obtained for the claimant against a third party, as the *tort feasor,* and the weekly payments until August 12th, 1941, were considered chargeable against that recovery.   The International Association sued out a writ

of *certiorari* in the Supreme Court to review the judgment against it. The Supreme Court, September 27th, 1933, affirmed the judgment of the Pleas. On October 13th, 1933, an order of *remittitur* to the Atlantic County Common Pleas was duly entered in the Supreme Court minutes by Mr. Mallin. Meanwhile, however, on October 10th, the attorney for the Association had served upon Mallin, as attorney, a notice of appeal to the Court of Errors and Appeals; and the appeal was filed October 14th, 1933. The Court of Errors and Appeals affirmed, and Mallin caused an order of affirmance and *remittitur,* dated May 4th, 1934, to be filed in the office of the clerk of the Court of Errors and Appeals on May 22d, 1934. On May 12th, 1934, Mallin wrote to the attorney of the International stating, "I received word of the affirmance of the judgment * * *. I would like to have the allowance of counsel fee of $500, together with the costs, paid to me as early as possible. Kindly advise me whether you can get this money within the next week." Discussion followed as to the amount to be paid, and Mr. Mallin wrote under date of June 5th, 1934: "I am willing, however, to accept the $500 fee plus the Court of Errors and Appeals taxed costs, amounting to $38.94. This excludes the taxed costs in the Common Pleas Court and the Supreme Court appeal. I feel this is a concession on my part, especially in view of the fact that I did not obtain an additional fee allowance in the Court of Common Pleas to which I was entitled had I pressed the issue. I shall appreciate your every endeavor to send me $538.94 within the next few days, *until which time I will hold up further action in this matter"* (italics inserted). Mallin receipted for the $500 attorney's fees on June 11th, 1934, and the $38.94 bill of costs on July 28th, 1934.

In August, 1941, when the International Association was arranging to make the weekly payments in accordance with the judgment, a dispute appears to have arisen between Mrs. Toner and Mallin as to whether or not she was obliged to make payments to him out of the amount thus coming to her in behalf of her son, and thereupon Mallin notified the Association that he claimed a lien on the moneys. There-

after, September 6th, 1941, Mallin, by the usual *ex parte* procedure, procured a new order of *remittitur* from the Supreme Court and, having done this, applied for and obtained an order from the Pleas providing:

"Ordered that Six Hundred and fifty Dollars ($650.00) be fixed and allowed Louis M. Mallin, Esq., for his services as counsel in the Atlantic County Court of Common Pleas, Two Hundred Dollars ($200.00) the New Jersey Supreme Court, Two Hundred and Fifty Dollars ($250.00) and Court of Errors and Appeals Two Hundred ($200.00) to be paid by the respondent, the International Association of Bridge, Structural and Ornamental Ironworkers."

That is the order under review.

In 1936 the legislature passed a statute, chapter 172 of the Pamphlet Laws of that year, appearing in the Revised Statutes as 34:15-67, whereby the Court of Common Pleas was given an authority which it had not theretofore possessed, namely:

"In cases where the judgment of the court of common pleas is reviewed by the supreme court by *certiorari*, the court of common pleas may allow a reasonable attorney fee to the party prevailing on the *certiorari* for his services on the *certiorari*, which fee shall be taxed in the costs and become a part of the final judgment in the cause, and may be recovered against the unsuccessful party. In cases where an appeal is taken from the judgment of the supreme court to the court of errors and appeals, the court of common pleas may allow a reasonable attorney fee to the party prevailing on the appeal to the court of errors and appeals for his services on the appeal, which fee shall be taxed in the cause and become a part of the final judgment in the cause, and may be recovered against the unsuccessful party."

The controversy is entitled in the cause; but it is actually between Mallin as attorney and the prosecutor. The notice reviewing the matter was signed by Mallin and was that the subscriber would "apply * * * for an order fixing and allowing counsel fees to me, to be taxed against the International Association * * *." The order does not make an increased award to the petitioner. It does not add to or

subtract from any liability which Mrs. Toner may have owed to Mallin for his services, and there is nothing in the case to indicate that a rule had at any time imposed such a liability or that Mallin had done aught to save from the statute of limitations any open claim he may have had against her for services rendered during or preceding the year 1934. It is clear that Mallin's negotiations with and receipt of moneys from the prosecutor following the determination of the issues by the Court of Errors and Appeals were on the assumption that the record had been technically completed so that he was entitled to demand and to receive his allowances and taxed costs. On no other theory was he entitled to receive his allowance or to intimate that after a named day he would take action if the amount was not paid. He had entered an order in the Court of Errors and Appeals remitting the record to the Supreme Court. No reason appears why he did not complete the technical procedure by forthwith entering a like order remitting from the Supreme Court to the Pleas unless it was considered that the *remittitur* to the Supreme Court entered by him at the time of the appeal from the Supreme Court to the Court of Errors and Appeals was effectively revived by the subsequent affirmance in the higher court. When he was paid the $500 counsel fee and the bill of the taxed costs in the Court of Errors and Appeals he expressly assumed the fact to be that he could have had costs taxed in the Common Pleas Court and in the Supreme Court and that had he pressed he might have obtained an additional fee in the Pleas. The possibility of those recoveries he noted and waived. Under the law as it then was he could not have obtained an order from the Pleas granting allowances for his services in the Supreme Court or in the Court of Errors and Appeals. *Township of Roxbury* v. *Plumstead,* 10 *N. J. Mis. R.* 1034: *Lange* v. *Eureka Printing Works,* 10 *Id.* 76. Now he seeks to sustain those allowances, made more than seven years after the event, upon the technical argument that there was no final judgment in the Common Pleas Court until the entering of the *remittitur* from the Supreme Court in September, 1941.

The entering of a proper *remittitur* is ordinarily done by

the attorney for the party who has prevailed and who seeks to establish his right of recovery. Mallin recognized the existence and appropriateness of that practice. He had entered such an order in the Supreme Court when he prevailed there, and he entered another in the Court of Errors and Appeals when he prevailed there. We think that the circumstances all combine to set up an estoppel against the seeking by him of the allowances contained within the order under review. He may not thus after all these years turn to his own advantage his omission to take a technical step which, at the appropriate time, both he and his adversary assumed had been taken. We think that Mallin is now taking a position inconsistent with that which he previously assumed and which he intended to influence, and which did influence, the conduct of another, and that such repudiation, inasmuch as it would effect an unjust result against the other party, is not responsive to the demands of justice and good conscience. Such a situation serves to set up an estoppel at law as well as in equity. The rule does not depend for its application upon the presence of legal consideration or the existence of a fraudulent intent. *New Jersey Suburban Water Co.* v. *Harrison,* 122 *N. J. L.* 189.

We conclude that Mallin was estopped from seeking or obtaining the disputed allowances and that the order of December 22d, 1941, and the rule of December 27th, 1941, to the extent that it orders judgment for counsel fee and costs, should be set aside.